IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

ANTHONY KOZUH,

      **Plaintiff,**

vs.                                               CASE NO. 5:04CV48-SPM/AK

NURSE NICHOLS, et al,

      **Defendants.**

_____/


## REPORT AND RECOMMENDATION

      Plaintiff brings this cause pursuant to 42 U.S.C. §1983, and is proceeding pro se

and in forma pauperis.  He alleges that while he was incarcerated at Santa Rosa

Correctional Institution the Defendants were deliberately indifferent to his medical

needs.  (Doc.1).  Defendants have moved to dismiss his complaint for failure to exhaust

administrative remedies (docs. 18 and 29), and Plaintiff has responded.  (Docs. 23, 32,

and 39).  Two named Defendants, Officers Burnham and Stien, have not been served.

Burnham was on extended medical leave when service was attempted upon him, and

the DOC was unable to identify Officer Stien without additional information.  (Doc. 10).

The Court advised Plaintiff that it would allow discovery and additional service if it

determined the case should go forward after reviewing the issues raised in the motions

to dismiss.  (Doc. 21).  Having reviewed said motions and finding them well taken, the Court declines to order any additional service upon Defendants Burnham and Stien.

## I.    Allegations of the complaint (Doc. 1)

Plaintiff had a hernia repair in August 2001, while he was incarcerated at Lake Correctional Institution, and claims that upon his transfer to Santa Rosa CI, he was refused his previous medical passes and forced to work beyond his medical capacity by Defendants Nichols, Morgan and Stone.  Plaintiff claims that this caused a reopening of his hernia repair.  After his second surgery, Plaintiff claims that he returned to Santa Rosa where he was again neglected by Defendant Beasley, who punished him for showing his no work pass by putting him in close confinement.  Plaintiff also claims that Defendants Knight and Officer Stien ignored his pass and forced him to work lifting over 40 pounds, bending and leaning over scrubbing floors.  He claims that they also forced him to work seven days a week, refused to give him a lower bunk, and ignored his complaints of pain.  Plaintiff claims that Defendant Beasley assigned him this work detail and refused to have his passes renewed.  Plaintiff then claims he was fired by Stien for sleeping during work call even though it was his day off.  Defendant Sloan put Plaintiff in the kitchen even though Plaintiff told him he was incapable of standing on his feet all day, bending and lifting.  In January (year unspecified), Plaintiff claims that his hernia was protruding and red, but Defendant Stone examined him and told him it was alright and sent him back to work after refusing him a lower bunk pass.  Plaintiff claims that he broke down to Defendant Dick requesting some relief from the work detail, but Defendant Dick threatened him with close confinement if he did not work.

**No. 5:04cv48-SPM/AK**

After attempting to work in pain, Plaintiff claims that he dropped a bucket on his leg resulting in several large gashes, which Defendant Beasley cleaned.  Plaintiff claims that Defendant Beasley examined his hernia at that time, but blamed him for losing weight and causing it to protrude.  He also claims that Defendant Stone refused to suture the gashes on his leg, which is now permanently disfigured.  In March 2003, Plaintiff was awaiting surgery and had a rest pass, but Defendant Nichols took it and then Defendant Burnham ordered him to work.  Plaintiff claims that he was in so much pain he could barely walk.

The grievances attached to the complaint show that Plaintiff wrote a grievance received by North Florida Reception Center (NFRC) on March 4, 2003, complaining about the events that occurred in 2001 following his first surgery.  He requested NFRC to put a medical hold on him.  He was told that there was already a hold on him and limitations and passes would be determined by Dr. Contarini, but that his complaints about treatment at Santa Rosa needed to be taken up there or with the warden or the inspector general.  (Doc. 1, Exhibit A).  Instead, Plaintiff filed another grievance on March 28, 2003, to NFRC, and the reply again explained that it could not control what had happened at another institution, and the grievance was denied.  (Exhibit B). Plaintiff filed additional grievances on March 31, 2003, to NFRC, which were denied because he stapled all of them together and because they were addressed to Santa Rosa.  (Exhibit C).  He was told that his other requests (about diet, passes, and limitations) needed to be addressed to his primary care provider through a sick call request.  (Exhibit C).  The requests to Santa Rosa were denied because Plaintiff did not

**No. 5:04cv48-SPM/AK**

use attachments to one request, but used four separate forms to state one grievance. (Exhibit D).  On March 31, 2003, Plaintiff again filed a grievance with NFRC, and the response again directed him to take up his safety concerns about other institutions with his classification officer and the Inspector General's office, not NFRC.  (Exhibit E).   A grievance dated May 18, 2003, to the classification officer at NFRC, states in response: "As was explained to you in a personal interview, your issues are of a medical nature and need to be addressed by the Medical Department.  I did contact Medical Administration and was told that another institution may review your chart and discontinue passes at any time.  If you feel you have been a victim of abuse, you will need to direct that to the Inspector's Office."  (Exhibit K).  Another grievance asking about a previous grievance directed to Mr. Kish on April 15, 2003, was denied on May 16, 2003, because "Per DC Rule Ch. 33-103.005(2(b)(1), the act of asking questions or seeking information, guidance or assistance is not considered to be a grievance." (Exhibit L).  Plaintiff wrote a grievance dated October 20, 2003, to the Warden at Apalachee CI complaining about his treatment at Santa Rosa, and was denied because "You do not state your current problem or permanent condition which needs addressing. On the contrary, you state your care while at Apalachee CI has been proper.  Your complaints cannot be investigated at this level due to involving other institutions and staff outside of Health Services."  (Exhibit M).  A grievance denied on April 21, 2004, concerns Plaintiff's request to go over his medical records, on grounds that medical records were not allowed on the compound.  (Exhibit N).  Apparently, Plaintiff appealed this denial and was told that he must formally request a call out to review his medical

**No. 5:04cv48-SPM/AK**

records, which would be done for him within the week.  (Exhibit O).  Another grievance about this call out was mailed on May 11, 2004.  (Exhibit P).

Plaintiff filed a "Summary Notice and Request for Inquiry and Acknowledgement," with the Florida Department of Law Enforcement in September 2003, wherein he generally complained about work assignments and diet restrictions, but provided no details.  (Exhibit G).  An exhibit to the "Summary Notice," is a grievance request about his medical care at Santa Rosa dated September 17, 2003, which says "This grievance was denied.  I am trying to get response.  I swear under penalty of perjury.  FLA Stat. 92.525.  I did send this and I was denied."  Signed by Plaintiff.  (Exhibit I).  A response was provided from FDLE dated October 2, 2003, indicating that his complaint would be forwarded to the Florida Department of Corrections for investigation.  (Exhibit H).  A copy of the letter from FDLE shows that it was forwarded and received by the Department of Corrections Office of Inspector General on October 7, 2003.  (Exhibit J).

Plaintiff has supplied a Health Pass dated July 9, 2002, for low bunk, no lifting over 10 pounds, no work activity, and no sport activity.  (Exhibit F).  The pass was effective from July 9, 2002, through September 9, 2002.

## II.   Analysis

Since passage of the PLRA, 42 U.S.C. § 1997e(a) now provides:  "*No action shall be brought* with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  (Emphasis added.) The exhaustion requirement of § 1997e(a) is mandatory, whether the claim is brought

**No. 5:04cv48-SPM/AK**

pursuant to § 1983 or <u>Bivens</u>.  <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1324-26 (11th Cir. 1998).  There is no discretion to waive this requirement or provide continuances of prisoner litigation in the event that a claim has not been exhausted prior to filing. <u>Alexander</u>, 159 F.3d at 1325; *see also* <u>Porter v. Nussle</u>, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002) (holding that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong."); <u>Higginbottom v. Carter</u>, 223 F.3d 1259, 1260-61 (11th Cir. 2000) (holding that an excessive force claim is subject to the exhaustion requirement); <u>Brown v. Sikes</u>, 212 F.3d 1205, 1207-08 (11th Cir. 2000) (finding that an inmate must "provide with his grievance all relevant information reasonably available to him" but he cannot be required to name individuals responsible for challenged conduct when he could not yet identify those persons).  Furthermore, this Court may not consider the adequacy or futility of administrative remedies, but only the availability of such.  <u>Higginbottom</u>, 223 F.3d at 1261, *citing* <u>Alexander</u>, 159 F.3d at 1323.  Even where an inmate seeks only monetary damages in a civil rights case, he must complete the prison administrative process if it could provide some sort of relief on the complaint although no money could be given administratively.  <u>Booth v. Churner</u>, 531 U.S. 956, 121 S. Ct. 1819, 1821, 149 L. Ed. 2d 958 (2001).  An inmate must not only commence the grievance process, he must perfect his appeal to the highest administrative level in the process.  <u>Alexander</u>, 159 F.3d at 1323.

**No. 5:04cv48-SPM/AK**

At all times relevant to the events complained of Plaintiff was housed within the Florida Department of Corrections.  Florida prisons have an administrative grievance program.  *See* FLA. ADMIN. CODE CH. 33-103. That program provides for a three step process: (1) an informal grievance directed to the staff member responsible for the particular problem at issue; (2) a formal grievance to the warden or assistant warden of the institution; and (3) an appeal to the Secretary.  (*Id.).*  For emergencies such as medical issues, an inmate may bypass the first step and proceed immediately to the warden for response.  (*Id.*).  Such action must be taken within 15 days of the event complained of.  See FLA. ADMIN. CODE CH. 33-103. 011(1).

A review of the grievances attached to the complaint do not reveal *any* informal, formal or grievance appeal concerning these events filed within a reasonable time period after these alleged events occurred or addressed to the appropriate corrections official.  Plaintiff describes some egregious behavior by various medical personnel, but he has not provided the Court with copies of *one* informal grievance to any of these persons or a formal grievance to the warden about *any* of these specific acts. The grievances and other papers Plaintiff eventually filed about his neglect at Santa Rosa were in the nature of questions about Nurse Nichols authority and a request to be moved to Butler CI or to the hospital where he could eat better.  Although Plaintiff mentions that Nurse Nichols ignored his no work pass and made some rude comments to him, he does not mention anywhere the primary events he describes in his complaint of being forced to work in excruciating pain so debilitating that he could not walk and which ripped his hernia repair open.  These type events are precisely what the

**No. 5:04cv48-SPM/AK**

emergency grievance procedure is designed for and Plaintiff has wholly failed to explain why he did not utilize this procedure under the serious circumstances he describes.

Plaintiff makes several vague excuses for not exhausting the grievance system and argues that the cases establishing the well settled law that exhaustion is mandatory and cannot be waived are inapplicable to the facts of this case, and this Court should find "technical exhaustion." (Doc. 32).

First, he intimates that he was misled by corrections staff at NFRC to file a grievance with the warden or inspector general's office. (See Exhibit A). However, even if this advice was incorrect, Plaintiff did not take it, and instead he filed a "Summary Notice" with the Florida Department of Law Enforcement, (exhibit G), which eventually found its way to the inspector general's office. (Exhibit H). Regardless of whether Plaintiff was misled or not, he waited an inordinate amount of time to bring these issues to the attention of any corrections staff. The grievances he filed at NFRC were in March 2003, *years* after his initial surgery in August 2001, and *months* after some of the events he describes. Although Plaintiff has offered a vague and sketchy time line of the events at Santa Rosa, the Court has pieced together from the complaint and papers attached to it that the first pass he claims was ignored was dated July 2002 through September 2002. The date he claims he was fired from the house boy job by Defendant Stien, which resulted in the kitchen job that allegedly caused his hernia to reopen, likely occurred in December 2002 (see doc. 23, exhibit D, p. 5), rather than in December 2003 as he states in his complaint since it must have occurred *before* the March 2003 surgery. The Court is not persuaded that Plaintiff "brought to the attention

**No. 5:04cv48-SPM/AK**

of Every Body of Justice he could, the exacting cruel deliberate indifference towards his medical needs." (Doc. 23, p. 7). He only needed to bring it to the attention of two persons, the warden at Santa Rosa and the Secretary of the DOC, within 15 days of the indifference he complains of to have some relief afforded to him, but for reasons as yet unexplained he did not avail himself of this rather simple process.

Plaintiff also alleges in a vague and conclusory manner that the State Attorney has evidence of his exhaustion that she has not provided the Court. However, Plaintiff does not identify the "evidence" he claims she has, and he has not stated in any of these papers (and there is a great deal of paper filed in conjunction with this lawsuit) that he actually filed a grievance on a specific date to a specific person and it was denied or ignored, which would be the only evidence that would be pertinent to this issue. The Court finds it significant that Plaintiff has recalled in startling detail numerous incidents of several years ago, remembering each word of his exchanges with various persons, but has no memory of the details of his efforts to obtain relief from his suffering via the grievance process. (See Doc. 32). Thus, his allegation that the "evidence" is out there somewhere and is being withheld by the state attorneys office is not credible.

The Court is also not persuaded by Plaintiff's argument (and the affidavits of other inmates from Santa Rosa) that the grievance system there was a "waste of time," and they feared reprisals if they used it. (Doc. 23, Exhibit A). The DOC grievance procedure has a mechanism whereby inmates in such fear may file a grievance directly to the Office of the Secretary, thereby bypassing the staff at the institution. FLA. ADMIN. CODE CH. 33-103.006(3)(c); 33-103.007(6)(a). Furthermore, this Court may not

**No. 5:04cv48-SPM/AK**

consider the adequacy or futility of administrative remedies, but only the availability of

such. <u>Higginbottom</u>, 223 F.3d at 1261, *citing* <u>Alexander</u>, 159 F.3d at 1323.

In light of the foregoing, it is respectfully **RECOMMENDED** that Defendants'

motions to dismiss (docs. 18 and 29) be **GRANTED**, and Plaintiff's complaint (doc. 1)

be **DISMISSED** for failure to exhaust administrative remedies pursuant to 42 U.S.C. §

1997(e).

**IN CHAMBERS** at Gainesville, Florida, this __7th__ day of July, 2005.




**s/ A. KORNBLUM_____**
**ALLAN KORNBLUM**
**UNITED STATES MAGISTRATE JUDGE**



<u>**NOTICE TO THE PARTIES**</u>

**A party may file specific, written objections to the proposed findings and recommendations within 15 days after being served with a copy of this report and recommendation. A party may respond to another party's objections within 10 days after being served with a copy thereof. Failure to file specific objections limits the scope of review of proposed factual findings and recommendations.**

**No. 5:04cv48-SPM/AK**